UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ALAGBARA A. AWOLOWO,

      Plaintiff,

v.                                                  Case No. 1:24cv170-MW-HTC

KEITH CARLISLE, et al.,

      Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

      Plaintiff Alagbara A. Awolowo, proceeding *pro se* and *in forma pauperis*, has moved to file a second amended complaint, Doc. 7, and filed a copy of the proposed second amended complaint, Doc. 8. Upon consideration, Awolowo's motion to amend will be granted. However, the undersigned finds the second amended complaint should be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a claim on which relief may be granted, and Awolowo has failed to cure the deficiencies identified in his prior complaints through amendment.

## I.    Procedural History

      Awolowo initiated this action on October 4, 2024, by filing a civil rights complaint under 42 U.S.C. § 1983 against Gainesville Police Department ("GPD") Officers Kelly Gaudet and Keith Carlisle relating to a traffic accident and his

subsequent arrest.  Doc. 1.  The Court screened the complaint under 28 U.S.C. § 1915 and, on October 21, 2024, issued a comprehensive 16-page order that described the legal standards applicable to Awolowo's claims and explained to him that the complaint was deficient because it: (1) did not comply with the Federal Rules of Civil Procedure, and (2) failed to state a claim on which relief may be granted. Doc. 4.  Among other things, the Court informed Awolowo that suing the GPD officers in their official capacities was effectively a suit against the City of Gainesville, but he had failed to state a claim against the City because he did not allege a custom or policy of the City led to a violation of his constitutional rights. *Id.* at 5.  The Court ordered Awolowo to, within twenty-one days, file either a notice of voluntary dismissal or an amended complaint that corrected the identified deficiencies.

On November 14, 2024, Awolowo submitted an amended complaint.  Doc. 5. Despite the information provided in the October 21 Order, Awolowo once again chose to sue the GPD officers in only their official capacities.  *Id.* at 3.  Accordingly, on November 27, 2024, the undersigned issued a report recommending that Awolowo's claims be dismissed because he had not alleged facts to support a municipal liability claim.  Doc. 6.

On December 10, 2024, Awolowo filed a motion to file a second amended complaint, Doc. 7, as well as a copy of the proposed second amended complaint,

Doc. 8. Awolowo asserts he erred by not suing the GPD officers in their individual capacities and wants to add allegations relating to the City of Gainesville's policies or customs. Doc. 7. Thus, the undersigned vacated the November 27 Report and Recommendation to consider Awolowo's motion to amend. Doc. 9.

## II.    Motion to File a Second Amended Complaint

The Court will grant Awolowo's motion to file a second amended complaint because he is allowed to amend once as a matter of course under Rule 15. Rule 15 states "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Here, although Awolowo filed a first amended complaint on November 14, 2024, he did so at the direction of the Court, and some courts in this circuit have held that a plaintiff does not lose his right under Rule 15 to amend his complaint as a matter of course by filing an amended complaint ordered by the court. *See Phillips v. Scully*, 2022 WL 19571320, at *3 (S.D. Ala. Dec. 20, 2022), *report and recommendation adopted*, 2023 WL 3044606 (S.D. Ala. Apr. 21, 2023) ("Although Phillips has already amended his complaint once, he did so at the Court's direction.

… Consequently, he was not barred from filing a second amended complaint as a matter of course."); *Renasant Bank, Inc. v. Smithgall*, 2016 WL 164311, at *2 (N.D. Ga. Jan. 13, 2016) ("Because the First Amended Complaint was not filed by the Plaintiff as 'a matter of course' but upon the Order of the Court, the Court holds that Plaintiff's court-ordered First Amended Complaint did not qualify as Plaintiff's amendment allowed as a matter of course under Fed. R. Civ. P. 15."). Thus, the Court will grant Awolowo's motion to amend and screen the second amended complaint.

## III.   Second Amended Complaint

Awolowo's second amended complaint names the City of Gainesville and Officers Gaudet and Carlisle as Defendants. Doc. 8 at 1-3. Gaudet and Carlisle are sued in both their individual and official capacities. *Id.* at 2. The second amended complaint sets forth the following factual allegations.

Around 3:00 p.m. on October 31, 2020, Awolowo was involved in a car accident in Gainesville, Florida. He "was not physically or mentally well or alert" because he "was experiencing an adverse reaction to a prescribed medication," which caused "extreme heart palpitations," and he suffered "injury from the accident." Awolowo tried unsuccessfully to get help from bystanders. He had trouble breathing and fell to the ground, with his face covered in powder from the airbag.

When Awolowo regained consciousness, he approached Officer Gaudet, told her that he was the driver of the van involved in the accident, and asked her for help and to take him to the hospital.  Gaudet, however, told Awolowo to leave the scene. Awolowo "grabbed the door of the van and tried to get into the van," stating, "please this is my van," and "I can't breathe."  "Weak and becoming increasingly confused," Awolowo complied with Gaudet's command and "stumbled" across the street. However, Awolowo fell to the ground after his "condition worsened and [he] became delusional."

Eventually, Awolowo stood up, took off his shirt, and tried "to get the attention and help from passing cars before [he] felt [himself] drift in and out of a surreal mental state[.]"  Awolowo then encountered Officer Carlisle, who was picking up money Awolowo had dropped in the street.  Awolowo, who was now naked, told Carlisle he had been robbed and raped.  Carlisle asked, "where are you coming from, and did you hit a car?"

Awolowo "continued to be incoherent" as Carlisle spoke with and questioned him.  Awolowo asked Carlisle "to please call someone" and Carlisle said he would do so.  Awolowo felt lightheaded, so he sat down, "trying to clear [his] head and figure out if these guys were friend or foe."

A second GPD officer arrived.  Awolowo claims he "knew something was going to happen" because he "saw it in [Carlisle's] eyes."  Awolowo yelled "you all

gone kill me" and the next thing he remembers was that he was bleeding from his head, had pain in his shoulder and legs, and had bruised ribs.  He claims this was the "result of the assault on [his] person by the police officers."  At some unspecified point, dispatch informed Carlisle that Awolowo was the driver of the van involved in the accident and asking for help; Carlisle responded, "ignore the witness, he is messing it up for us."

Awolowo also maintains Carlisle "decided to change the status of the accident from a simple accident to a higher level" and classified Awolowo as a criminal rather than a victim "after finding paperwork in [his] briefcase revealing that [he] was a part of an active and well-known community based investigation of police misconduct by a hand full of" GPD officers.

Awolowo claims that as he "stood buck naked … begging for help," he was arrested and charged with battery on a police officer, resisting arrest, theft, robbery, reckless endangerment, wielding a firearm, hit and run, failing to help an injured person after an accident, refusing to obey a command, and making an illegal lane change.  Awolowo asserts the GPD officers did not address his need for medical care, and instead investigated the accident as a crime and focused their "efforts on finding the ownership of the electronic equipment in [his] vehicle."  Awolowo also asserts Officer Carlisle called someone and asked if Awolowo could be charged with burglary.

Based on the foregoing, Awolowo alleges the Defendants violated his constitutional rights. As a result, he seeks damages and injunctive relief. Doc. 8 at 15-17.

## IV.    Legal Standard

Because Awolowo is proceeding *in forma pauperis*, the Court must dismiss his second amended complaint, or any portion thereof, if it determines it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To state a claim, Awolowo must plead factual content which allows the Court to draw the reasonable inference the Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe Awolowo's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## V.    Discussion

The undersigned finds Awolowo's second amended complaint fails to state any viable claim for relief. Indeed, as explained below, the claims continue to suffer from the same deficiencies the Court identified in its October 21 Order. *See* Doc. 4.

Because Awolowo has been given multiple opportunities to state a claim and failed to do so, this case should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

## A.    Claims Against Gaudet and Carlisle

Awolowo claims Gaudet and Carlisle violated his constitutional rights in several ways, including by (1) maliciously prosecuting or falsely arresting him, (2) engaging in a conspiracy to obstruct justice, (3) giving false testimony at trial, (4) failing to provide him with medical attention, and (5) using excessive force against him.[1]  For the reasons set forth below, Awolowo has failed to allege facts sufficient to support any of these claims.

---

[1] Awolowo also alleges Gaudet and Carlisle violated that part of Article 1, Section 17 of the Florida Constitution prohibiting cruel and unusual punishment.  Doc. 8 at 15.  However, the prohibition on cruel and unusual punishment is not applicable to Awolowo's allegations because he was not convicted at the time he interacted with the officers.  *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (Eighth Amendment's Cruel and Unusual Punishment Clause applies to claims of mistreatment by convicted prisoners).  Also, Awolowo has not identified an enabling statute which allows him to seek damages for violations of the Florida Constitution.  *See Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 913 n.4 (11th Cir. 2007) (noting district court correctly dismissed plaintiffs' claims under the Florida Constitution to the extent they sought monetary damages because plaintiffs cited no authority creating a civil cause of action for monetary relief) (citation omitted); *Cannon v. City of Sarasota*, 2010 WL 962934, at *4 (M.D. Fla. Mar. 16, 2010) ("The Florida Supreme Court has held that a claim for monetary damages cannot be maintained for alleged violations of the Florida Constitution.") (citations omitted).  Similarly, Awolowo's claim that his constitutional rights were violated when the officers violated GPD policies fails as a matter of law.  *See Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence").

1. <u>Awolowo cannot state a malicious prosecution or false arrest claim.</u>[2]

Awolowo cannot state a claim for malicious prosecution or false arrest against either Carlisle or Gaudet. First, to succeed on these claims, Awolowo must show the officers arrested him without probable cause. *See McCloud v. Fortune*, 262 F. App'x 947, 949 (11th Cir. 2008) (stating that to establish a federal malicious prosecution claim under § 1983 a plaintiff in Florida must prove, among other things, "there was an absence of probable cause for the original proceeding"); *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998) (noting plaintiffs have the burden of demonstrating the absence of probable cause to succeed on a false arrest claim under § 1983). However, Awolowo cannot make such a showing because he was convicted of charges stemming from the October 2020 accident.[3] *See Hall v. Smith*, 170 F. App'x 105, 107 (11th Cir. 2006) ("[T]he judicially-recognized fact that Hall subsequently

---

[2] Whether Awolowo was arrested at the scene of the accident without a warrant or later pursuant to a warrant determines whether his claim is characterized as a malicious prosecution claim or a false arrest claim. *See Colon v. Smith*, 2024 WL 3898011, at *7 (11th Cir. 2024) ("While Colon's warrantless arrest—a seizure *without* legal process—would support a false arrest claim, it cannot support his malicious prosecution claims. … Instead, a malicious prosecution claim must be premised on a seizure *pursuant* to legal process, such as a warrant-based arrest or a seizure 'following an arraignment, indictment, or probable-cause hearing.'") (citations omitted). But in either scenario, Awolowo has failed to state a claim.

[3] The undersigned takes judicial notice of the state court records in Awolowo's criminal case. *See State v. Awolowo*, Alachua Cnty. Circuit Court Case No. 2020 CF 3434. The records can be viewed online at https://www.alachuaclerk.org/court_records/index.cfm?section=casehist. After a jury trial, Awolowo was acquitted on two charges—leaving the scene of an accident involving injury and willful or wanton reckless driving. But the jury found him guilty of resisting arrest without violence and leaving the scene of an accident with property damage. *See Awolowo v. State*, 389 So. 3d 788, 792 (Fla. 1st DCA 2024). Those records do not indicate Awolowo was charged with theft, robbery, or wielding a firearm, as he claims.

pled no contest and was adjudged guilty demonstrates his detention was not unreasonable or unlawful."); *see also Bristol v. Butts Cnty., Ga.*, 2024 WL 3558737, at *9 (M.D. Ga. July 24, 2024) ("[A] conviction—whether by a jury or admission of guilt—is a pretty strong (if not foolproof) indicator of probable cause.").

Second, because Awolowo was convicted of charges stemming from the October 2020 accident, any malicious prosecution or false arrest claim is barred by *Heck v. Humphrey*, 512 U.S. 477, (1994).[4]  In *Heck*, the Supreme Court held:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.  Thus, a plaintiff may not obtain damages under § 1983 if a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

---

[4] Although in *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), Justice Souter suggested in a concurring opinion an exception to the *Heck* bar may apply when a plaintiff is no longer in custody and habeas relief is unavailable, "neither the Supreme Court nor [the Eleventh Circuit] has applied this exception in a published opinion."  *Butler v. Georgia*, 2022 WL 17484910, at *4 (11th Cir. Dec. 7, 2022).  And the Eleventh Circuit has applied *Heck* to plaintiffs who were not in custody in several unpublished opinions.  *See, e.g.*, *Reilly v. Herrera*, 622 F. App'x 832 (11th Cir. 2015); *Vickers v. Donahue*, 137 F. App'x 285, 289-90 (11th Cir. 2005).  Thus, the undersigned finds *Heck* is applicable to Awolowo's claims.

Here, if Awolowo succeeded on a claim that Carlisle and Gaudet arrested him without probable cause, it would undermine the validity of his convictions for resisting arrest without violence and leaving the scene of an accident with property damage.[5]  *See Hoffman v. Beseler*, 760 F. App'x 775, 778-79 (11th Cir. 2019) (concluding that because plaintiff was convicted of a criminal offense, and she had not shown that conviction was invalidated, *Heck* barred her malicious prosecution and false arrest claims); *Quinlan v. City of Pensacola*, 449 F. App'x 867, 870 (11th Cir. 2011) (concluding plaintiff's § 1983 claims were barred by *Heck* because "a finding that the officers did not have probable cause would imply the invalidity of [plaintiff's] conviction for resisting an officer without violence").  Thus, Awolowo's malicious prosecution and false arrest claims are subject to dismissal.

2. <u>Awolowo cannot state a claim based on obstruction of justice.</u>

Awolowo alleges Carlisle conspired with Gaudet to file false reports, withhold evidence, and obstruct justice.  Doc. 8 at 4.  However, these allegations are too conclusory to support a claim.  Awolowo has pleaded no facts supporting the existence of a conspiracy or indicating that Carlisle and Gaudet ever communicated with each other.  *See Collins v. Bates*, 2018 WL 5090845, at *7 (11th Cir. 2018) (finding plaintiff's "vague and conclusory allegation that all of the defendants

---

[5] Thus, to the extent Awolowo suggests Officer Gaudet's order to him to "leave the scene" shows he is innocent of the leaving the scene of an accident charge, such a claim cannot proceed around the *Heck* bar.

conspired against him was insufficient to establish the existence of a conspiracy for purposes of establishing a §§ 1983, 1985, or 1986 violation"); *Grider v. Cook*, 522 F. App'x 544, 547 (11th Cir. 2013) (Plaintiff "provided nothing more than a 'general conclusory allegation of conspiracy' which will not support such a claim."); *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement, which presupposes communication.").

Even accepting Awolowo's allegation that the officers withheld evidence as true, "[f]abrication or concealment of evidence during an investigation does not itself violate the Constitution." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1240 (S.D. Fla. 2013); *see also Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, 'in and of itself,' … does not impair anyone's constitutional right.").[6]

3.  Awolowo cannot state a claim based on false trial testimony.

Awolowo alleges Carlisle made two false statements at his criminal trial. Awolowo asserts: (1) Carlisle testified he handcuffed Awolowo to keep him from

---

[6] Furthermore, to the extent Awolowo is alleging Carlisle and Gaudet's misconduct caused his convictions, such claims are also *Heck*-barred.  *See Heck*, 512 U.S. at 479, 490 (finding § 1983 action alleging prosecutors and investigator knowingly destroyed exculpatory evidence was barred because it constituted challenge to legality of still outstanding conviction); *Welsh v. Thorne*, 2024 WL 1956145, at *1 (5th Cir. May 3, 2024) (finding if defendant's allegedly false report directly caused plaintiff's continued confinement, claim was barred by *Heck*); *Griffin v. Baltimore Police Dep't*, 804 F.3d 692, 695 (4th Cir. 2015) (a § 1983 action based on *Brady* claims may not proceed around the *Heck* bar); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) (finding conspiracy to obstruct justice claim barred by *Heck*).

running away, which contradicted another statement Carlisle made indicating he handcuffed Awolowo for safety purposes; and (2) Carlisle falsely testified "he was the first officer on the scene," when Officer Gaudet "was actually the first officer to engage [Awolowo]." Doc. 8 at 12.

However, Awolowo cannot state a claim based on Carlisle's allegedly false trial testimony because "[p]olice officers enjoy the same absolute immunity as lay witnesses for their testimony at trial[.]" *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (noting "[t]he penalty for false testimony … is the same for any witness, that is, a potential prosecution for perjury"); *see also Baker v. City of Hollywood*, 391 F. App'x 819, 822 (11th Cir. 2010) ("witnesses are absolutely immune from damages based on their testimony"). Thus, Awolowo's allegations regarding Carlisle's trial testimony provide no basis for relief.[7]

### 4. Awolowo has failed to state a deliberate indifference claim.

Awolowo claims Gaudet and Carlisle displayed deliberate indifference to his medical needs following the accident. Establishing liability on a deliberate

---

[7] Furthermore, Awolowo's false testimony allegations are contradicted by the trial transcript. First, contrary to what Awolowo says, Carlisle testified at trial that he handcuffed Awolowo for safety purposes. *See* Trial Transcript Day 1 (287:20-21) ("I securely detained him for his own safety."). Second, Carlisle testified that Gaudet was assigned to work the traffic accident and she arrived there before him. *See* Trial Transcript Day 1 (265:20-21) (stating Gaudet "was assigned to the traffic crash"); (266:15-21) (stating he was not the first officer on the scene and Gaudet arrived before him). The transcript of Awolowo's criminal trial can be viewed online at https://www.alachuaclerk.org/court_records/index.cfm?section=casehist by searching for Alachua Cnty. Circuit Court Case No. 2020 CF 3434 and opening the docket entries dated August 8, 2022 (Day 2 of Trial), and August 15, 2022 (Day 1 of Trial).

indifference claim involves two components. First, "the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, 'objectively, sufficiently serious.'" *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, "the plaintiff must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,' and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat … that even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable … if he 'responded reasonably to the risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 839, 844-45).

Here, Awolowo has not alleged facts to support the subjective component of a deliberate indifference claim. Awolowo alleges only that he requested help from Gaudet and Carlisle and relayed to Gaudet that he was having difficulty breathing. Other than these subjective complaints, he does not allege he had any visible injuries that would have been apparent to the officers. These facts are not sufficient to infer that Gaudet and Carlisle knew that failing to immediately transport Awolowo to the hospital or summon medical assistance for him caused a substantial risk of serious harm.

Moreover, courts have found that not every delay in providing treatment amounts to deliberate indifference.[8] *See Jackson v. Capraun*, 534 F. App'x 854, 857 (11th Cir. 2013) (officer who filled out arrest report and assisted in arrest of two other people after plaintiff told officer he needed medical care for acute back pain did not exhibit deliberate indifference); *Goree v. City of Atlanta*, 276 F. App'x 919, 921-22 (11th Cir. 2008) (finding officers' one hour and twenty minute delay in taking arrestee to hospital after witnessing "the extent of his physical injuries, including blood flowing from his eyes and mouth, limping, and grimaces of pain," did not amount to deliberate indifference). In addition, Awolowo does not allege any delay in treatment affected him. *See Pounds v. Dieguez*, 850 F. App'x 738, 741 (11th Cir. 2021) (affirming sua sponte dismissal of deliberate indifference claim and noting plaintiff "has not alleged that the delay in seeing a specialist has had a detrimental effect on his health"); *Taylor*, 221 F.3d at 1259-60 ("delay of treatment for obviously serious conditions" rises to level of deliberate indifference when "'it is apparent that delay would detrimentally exacerbate the medical problem,' the delay does seriously

---

[8] Awolowo has not alleged how much time elapsed between his first contact with officers and when he received medical treatment. Nonetheless, Awolowo testified at his criminal trial that he asked Carlisle to call an ambulance and Carlisle did so. *See* Trial Transcript Day 2 (27:9-11) ("I remember … asking the officer can they take me to the hospital. The officer asked for, called for EMS."); (27:25 – 28:2) ("When I went over, I asked the officer can they call the ambulance. I remember that and he called the ambulance."). The video from Carlisle's body camera was played at trial and indicates Awolowo was not receptive to receiving treatment. *See* Trial Transcript Day 1 (293:17-19) (transcript of the recording from Carlisle's body camera, wherein Awolowo states "I don't give a fuck about no damn ambulance. Fuck that motherfucking ambulance.").

exacerbate the medical problem, and the delay is medically unjustified") (citation omitted). Based on the foregoing, Awolowo has failed to state a deliberate indifference claim against either Gaudet or Carlisle.

### 5. Awolowo has failed to state an excessive force claim.

Awolowo also claims Carlisle used excessive force on him. In evaluating whether a use of force is objectively reasonable under the Fourth Amendment, courts consider: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022) (citation omitted). Courts "also consider the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Id.* (citation omitted).

Here, Awolowo's allegations do not state an excessive force claim. He alleges only that Carlisle and another officer were standing near him, and then the next thing he remembers is he was bleeding from his head, had pain in his shoulder and legs, and had bruised ribs. He claims these injuries were the result of an "assault" by the officers, but the characterization of the officers' conduct as an "assault" is not supported by any facts. Awolowo does not describe what types of force the officers used or which officer used what force. He also does not describe the circumstances

surrounding the use of force, such as whether or not he was complying the officers' commands when force was used, and his conviction indicates he was resisting the officers in some way.[9] *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) ("some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense") (citation omitted).

Based on the foregoing, Awolowo's allegations do not nudge his excessive force claim against Carlisle across the line from conceivable to plausible. *See Barr v. Gee*, 437 F. App'x 865, 877-78 (11th Cir. 2011) (affirming dismissal of excessive force claim when plaintiff alleged officers "beat [him] into submission" because assertion that force was "excessive" was conclusory and he "did not describe the 'beating' or otherwise allege facts permitting a plausible inference that the force [the officers] used was unreasonable"); *Mincey v. Starling*, 2020 WL 3103978, at * (M.D. Fla. June 11, 2020) (concluding plaintiff failed to state an excessive force claim and

---

[9] Awolowo does not provide these details despite indicating his interaction with Carlisle was captured by Carlisle's body camera. *See* Doc. 8 at 11 ("The bodycam shows me asking … Carlisle are you here to help me and are you really officers."). Likewise, while Awolowo claims he was hospitalized for seven days following the October 2020 incident and needed six months of rehabilitation, Doc. 8 at 15, he does not specify whether the treatment he received was related to the use of force, to the medical issue which preceded the accident, or to the injuries he sustained in the accident. And the only injuries he connects to the use of force—a bleeding head, shoulder and leg pain, and bruised ribs—are minimal.

noting "[t]hat Plaintiff was injured during the arrest does not permit the conclusion, without supporting facts, that the officers used more force than was necessary under the circumstances").

### B.   Awolowo has not stated a claim against the City of Gainesville.

Awolowo also seeks to hold the City of Gainesville liable for violations of his constitutional rights.[10]   To hold a governmental entity liable under § 1983, "'a plaintiff must show: (1) that his constitutional rights were violated; (2) that the [entity] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Grochowski v. Clayton Cnty.*, 961 F.3d 1311, 1321 (11th Cir. 2020) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

As an initial matter, since Awolowo has not stated a claim against Gaudet and Carlisle, there is no underlying constitutional violation for which the City could be liable.  *See Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is

---

[10] The claims against Gaudet and Carlisle in their official capacities are duplicative of the claims against the City of Gainesville and, thus, need not be addressed separately.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.' Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *see also Higdon v. Fulton Cnty., Ga.*, 746 F. App'x 796, 799 (11th Cir. 2018) ("official-capacity claims against municipal officers should be dismissed, as keeping the claims against both the municipality and the officers would be redundant").

no underlying constitutional violation.").  But even assuming Awolowo had alleged an underlying violation, he has not identified a connection between any policy or custom of the City and the officers' actions.

Awolowo says the City of Gainesville has three different policies or customs which are purportedly relevant to his claims.[11]  First, he says the City has a custom of allowing "ghost stops," in which GPD officers: (1) initiate traffic stops for "vague" reasons such as an illegal lane change or failing to stop at a stop sign; (2) claim they see something suspicious in the vehicle or smell marijuana to justify a search of the vehicle and driver; and (3) fail to complete reports regarding the traffic stop.  Doc. 8 at 5.

While Awolowo claims he "can attest to how [this custom] directly pertains to this case," he never alleges how the custom is relevant to his claims.  *Id.*  Indeed, the undersigned does not see how the "ghost stop" custom could be relevant because

---

[11] Awolowo's second amended complaint contains additional allegations regarding the City of Gainesville.  *See e.g.*, Doc. 8 at 4 (The City "has created a society and adopted a culture that by default gives birth to deliberate indifference, malicious prosecution, retaliation, and excessive force[.]").  But those allegations are conclusory and insufficient to support a municipal liability claim under §1983.  *See Holt v. Floyd Cnty., Ga.*, 747 F. App'x 832, 833 (11th Cir. 2019) (affirming dismissal of § 1983 municipal liability claim where plaintiff "had pled only conclusory allegations of a policy, practice or custom"); *Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (allegation that there is "a long standing policy, practice, and custom of treating similarly situated prisoners differently in this application of gain time" was vague, conclusory, and insufficient to support supervisory liability); *Grider*, 522 F. App'x at 547-48 (affirming dismissal of municipal liability claim when plaintiff "provided a formulaic recitation of a claim … by stating that 'defendants' conduct was the product of an official policy or unofficial custom,' but he did not provide any specific facts about any policy or custom that resulted in his alleged constitutional deprivation").

GPD officers did not pull Awolowo over for traffic violations; instead, GPD officers responded to the scene of an accident.  Thus, the "ghost stop" custom could not be the moving force behind any potential violation of Awolowo's constitutional rights and it does not provide a basis to impose municipal liability on the City in this case. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.").

Second, Awolowo claims the City of Gainesville "has a long history of using City budgets and state funding to finance projects that the City believes can produce the most money for the City, while at the same time cutting budgets on projects that protect the marginalized and disenfranchised, weak and vulnerable persons that are protected under state and federal law."  Doc. 8 at 4.  To support this claim, Awolowo alleges that in 2013 the City of Gainesville diverted funding from a program he developed to help at-risk youth to efforts to "combat[] gang activity in Gainesville." Doc. 8 at 6-7.

However, Awolowo has not alleged how this budget choice—which occurred in 2013—has any connection to the constitutional violations he allegedly experienced in October 2020.  *See McDowell*, 392 F.3d at 1292 ("The County's liability cannot be dependent on the scant likelihood that its budget decisions would

trickle down the administrative facets and deprive a person of his constitutional rights. Instead, liability must be premised on a finding that '*this*' budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered."). Nor does he allege facts suggesting the City's policymakers should have known that diverting money from a program for at-risk youth to combatting gang activity would lead to the constitutional violations alleged here. *See id.* ("McDowell cannot establish that a reasonable member of the Board would conclude that the County's budget decisions would lead to events that occurred here.").

Lastly, Awolowo alleges that between 2011 to 2013, he noticed "unmarked Dodge Chargers" following his vehicle around the east side of Gainesville, an area "historically underserved economically and socially." Doc. 8 at 8. Awolowo complained to the Internal Affairs division of the GPD about these vehicles and asked why they "tail and harass" him. *Id.* In response, an officer said the City "assigns officers to the east side territory that are from outside the community like Jacksonville and Orlando not so out west." *Id.*

Like Awolowo's other allegations, these allegations are not sufficient to state a claim for municipal liability. How the City assigned officers to particular areas in 2011 to 2013 has no discernible relationship to the constitutional violations Awolowo allegedly experienced in October 2020.

Because Awolowo has not identified a policy or custom of the City of Gainesville which led to a violation of his constitutional rights, he has not stated a claim against the City.[12]  And the City is not liable for the allegedly unconstitutional acts of its employees based on vicarious liability or respondeat superior.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (finding § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) ("It is well established that a municipality may be held liable under § 1983 only when the deprivation at issue was undertaken pursuant to city 'custom' or 'policy,' and not simply on the basis of *respondeat superior*.").

## VI.   Conclusion

After Awolowo filed his original complaint, Doc. 1, the Court issued an order on October 21, 2024, which described the legal standards applicable to his claims, advised Awolowo the complaint failed to state a claim, and gave Awolowo an opportunity to submit an amended complaint, Doc. 4.  Awolowo then submitted an amended complaint.  Doc. 5.  In the now vacated Report and Recommendation, the

---

[12] Awolowo actually alleges Officers Gaudet and Carlisle failed to comply with GPD policy in some respects.  *See* Doc. 8 at 14 (alleging Gaudet and Carlisle violated GPD General Order 71.1).  These allegations undermine Awolowo's municipal liability claim, as they indicate the officers were not acting pursuant to a City policy and, thus, a City policy could not have been the moving force behind any constitutional violation.

undersigned explained the amended complaint also failed to state a claim because it did not show a custom or policy of the City of Gainesville led to a violation of Awolowo's constitutional rights. Doc. 6. Awolowo has now filed a second amended complaint, but it continues to suffer from the same problems as the original and first amended complaints. Because Awolowo has failed to cure the deficiencies identified in the original and first amended complaints through amendment, this case should be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Brennan v. Comm'r, Ala. Dep't of Corr.*, 626 F. App'x 939, 945-46 (11th Cir. 2015) ("A *pro se* litigant must be given at least one opportunity to amend his complaint before the court dismisses the action with prejudice if it appears that a more carefully drafted pleading would state a claim upon which relief could be granted.").

Accordingly, it is ORDERED:

1.    Awolowo's motion to file a second amended complaint, Doc. 7, is GRANTED, and the second amended complaint, Doc. 8, is now the operative pleading.

And it is RECOMMENDED:

1.    That Awolowo's second amended complaint be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) due to his failure to state a claim on which relief may be granted.

2.      That the Clerk close the file.

At Pensacola, Florida, this 23rd day of December, 2024.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.